No. 181289, United States v. Barney Baez-Martinez Good morning, your honors. May it please the court, my name is Franco Baez and I represent the defendant appellant in this matter, Mr. Jorge Ram Baez-Martinez. May it please reserve four minutes for rebuttal? Yes. Thank you. Your honor, at the heart of this case is the proper application of the force clause of the Armed Career Criminal Act. The district court here deemed Mr. Baez an Armed Career Criminal on the basis of three prior convictions. Two attempt and murder convictions and one for second degree murder. Mr. Baez, as the court is aware, also has convictions for robbery of a motor vehicle under Article 173B of the Puerto Rico Penal Code, as well as simple robbery and kidnapping. However, today we want to focus our arguments on the specific predicates that the court relied on and we would respectfully submit that the government waived any argument that simple robbery and kidnapping are not violent felonies under the ACCA by failing to address our arguments on appeal. Now, before I turn to the substantive issue here, I just want to briefly address the government's argument that Mr. Baez either waived or forfeited the argument that attempt and murder may be committed by omission by failing to develop that argument below. Mr. Baez did raise in the district court the claim that murder is not a crime of violence or violent felony. And that claim was based in part on the argument that attempted murder may be committed by an act of omission. And perhaps the most evident way that we see on the record that it was properly presented is by the district court's own action. The district court addressed and ultimately rejected that argument. However, even assuming that the omission argument was not properly developed below, I think that the government's waiver argument overlooks the difference between a claim and an argument in support of that claim. And generally speaking, it is claims that are deemed waived or forfeited and not arguments themselves. On the omission argument. Yes, Your Honor. How do you suggest, how do you reconcile the holding you would like to make that an omission is not conduct that causes a serious bodily injury with the statement in Castleman that says it is, and I'm quoting, it is impossible to cause bodily injury without applying force in the common law sense. How do we, and here there's bodily injury, so Castleman almost seems to create a tautology that if there's bodily injury, then there must have been force. And yet I think you want us to reason, not surprisingly and not illogically, that murder can be accomplished by omission and there would be no force. That is correct, Your Honor. And we would respectfully disagree with that assessment of Castleman. And I'll explain why. First, Castleman dealt only with two things, direct and indirect means of causing injury. And I think that it was in that context that the court made those expressions that it is impossible to cause a physical injury without the use of force. So I think you're saying I shouldn't read that sentence literally out of context. Right. I would ask the court to read it in the context of the entire opinion in which, and I think that that would be a more fair assessment of what it means. And I also think that it's important when you're reading that sentence that the court looks to other president from the Supreme Court itself. For instance, in the 2010 decision in Johnson, sometimes referred to as Johnson 1, the court looked at the physical force, statutory language of the Armed Career Criminal Act's force clause and specifically to the words physical force. Now, looking at the word physical, the court commented, excuse me, commented that it refers to force exerted by and through concrete bodies. And it distinguished that force from other types of force, such as emotional or intellectual force. And then when you join the word physical to force, the court construed it or interpreted it as violent force that is capable of causing harm or injury to another. I think you relied below. I did think you raised the admission, or at least the district court thought you seemed to have raised the omission. But I don't see any indication that you've raised anywhere the notion that first degree attempted murder can be accomplished by emotional force. Oh, and that is not my argument at all, simply by means of an omission. If you win, if you convince us that because the attempted murder under Puerto Rico includes omission and omission can be accomplished without physical force, then you've still got to win at least one of the other two offenses as well, right? Well, because so I was thinking about this recently and I believe that we would still have to win either the second degree murder or the robbery of a motor vehicle argument. And obviously the ones that the government also- You've got to win two out of those three. Attempted murder, second degree murder, robbery, you've got to win three of them, two of them, right? But that would be to prevail on the attempted murder charges because for purposes of the ACA, if I'm remembering correctly, the Article 173B convictions for the same act as the attempted murder themselves. So they, we would submit they fall under that same umbrella and they cannot count as additional predicates. Counsel, before you move on to that though, can you give me an example of where a second degree murder could be committed by omission that would not involve the indirect use of force? So our, if I'm understanding your honor's argument, we are, our contention is not that second degree murder can be committed by omission, it's that attempted murder. I'm sorry. So I think there are several sources that we can look to. The first one being the district court itself acknowledged that it was, that it represented a realistic probability rather than a theoretical possibility. Second would be the government's waiver of that argument. Reading the government's brief, it doesn't seem like they seriously dispute that contention. Also in People v. Bonilla-Ortiz, which is the actual case that the lower court relied on, it seems to state that attempted murder can be predicated on a theory of omission. So those are just three. Yes, but give me, give me an example of, of omission that does not involve indirect use of force. Because you, you say that those two are conflated and I was trying to think of, okay, if they're conflated, let's, let's take away the indirect use of force and, and how do you, how do you commit the, the offense by omission without using indirect use? I haven't come up with an example yet. Do you have one? Well, under Puerto Rico law, I don't think there was a case specifically on point. I did cite in footnote two of our reply brief, a case called People v. Zustache-Zustache, where a police officer was indicted based on a theory of failing to act to stop another police officer from killing out another person. But I would... From doing... From committing, essentially, murdering a third individual. So, and then I would also point to, and I think that case discusses that whenever there is a duty to act and it's accompanied by a failure to act and that, and also accompanied by an intent to kill, then that should be enough to qualify under Puerto Rico's attempted murder statutes. So how, how is that not use of force, indirect use of force? Because, Your Honor, in the Johnson one decision, the court interpreted the, the, the term force or physical force, well, excuse me, going back to physical, it, it can't be read by itself, the word force. It has to be read alongside the word physical. So you, you, in the end, you have to say that in Castleman just has no relevance at all. Because it easily fits under Castleman. Well, I, I think that there is, I, I, I respectfully disagree with Your Honor's assessment. I think there are circuits that have found that it does not fit under Castleman, because indirect means such as applying poison are entirely different. So that, that does require some use of force, even if it's not directly touching the person, even if it doesn't require touching of another. But Castleman didn't, those, those cases may say that, but Castleman didn't say that. Well, Castleman distinguished between direct means, and I think the examples that the opinion uses are kicking or punching versus indirect means of causing injury. And I think, I believe the example is poison. So Castleman, it expressly reserved the question of whether an omission could constitute a use of force. And I think that's plainly present there in the, in the majority opinion, even though Justice Scalia may have disagreed with it. What about a parent who intentionally doesn't feed an infant? Is that murder in Puerto Rico? I'm sorry, Your Honor, I didn't hear your question. A parent who intentionally does not feed an infant. Is that murder in Puerto Rico? I, I would submit that under, under the key saw, yes, it would, it, it, it, or under the statutory definition, it would meet that definition because, again, there is a duty as a parent to act to take care of your child. And that's accompanied by an omission, which is the, the absence of action. And if there was an intent to kill that child, then yes, it certainly would fall under that, under the statute, I would submit. And again, the, the flaw in the, in the lower court's reasoning is that it relied on Justice Scalia's lone concurrence in Castleman. But as I say, as I mentioned earlier, that was completely rejected by the, the majority. And I think, Your Honors, I would also point to other Supreme Court cases. I see my time is up. I just want to mention two cases. The, the Chambers case where the Supreme Court held that a failure to report statute cannot qualify under the Fourth Clause because, quote, it amounts to a form of inaction. And also there is case law from the circuit in Teague that held that a child endangerment statute would not meet the, the Fourth Clause precisely because there is no action at all. Your Honors, I have no further questions. Okay, thank you. Good morning, Your Honors, and may it please the Court. Francisco de Sousa Martinez for the government. Your Honors, the Supreme Court has stated two things of relevance that I'd like to bring up. First, the Supreme Court has explained that murder has no comparison in terms of moral depravity given its severity and irrevocability. Second, the Supreme Court has also commanded that we, in interpreting statutes, besides the statutory structure, history, and purpose, should also use our common sense to not reach absurd results. Isn't the problem here, I mean, that makes all the arguments. So you look at the statute that Congress passed and you, and it clearly covered murder because of the residual clause, which captured no need to say anything more about it given what you just said. But we're now dealing with a guideline that has no residual clause, so you need to get under the Fourth Clause, right? Correct, Your Honor. And then there's no Supreme Court case that doesn't tell us not to apply the categorical or modified categorical in assessing any crime, even murder. Sure, correct, Your Honor. We do have to employ the categorical approach. Now, with regard to biases to attempted murder convictions, the government thinks that they qualify as ACCA predicates under the Fourth Clause. So what do you say about the omission? The fact that there is an omission, that it could be accomplished by omission? The statute expressly says murder in Puerto Rico can be accomplished by omission, right? Correct, Your Honor. But it also said it has to be with malice aforethought and as the defense concedes with a specific intent to kill those. So this is not a just any omission. It's an omission purposely and knowingly undertaken for the specific purpose of causing the death of another person. So a parent who refuses to feed an infant and does it to kill the infant? Correct, Your Honor. That would be murder? Yes. And then how does that qualify under the Fourth Clause? Your Honor, because by undertaking that omission, that person is employing an external force, let's say the starvation of the child, as his own, as his weapon of choice. It is the device that is used for it. What's the force? The impact of the starvation or the control could also be seen as the force being used, the control that the parent in that case has over that child. Over a three-day-old infant that they don't touch? Correct, Your Honor. If they have control over the infant, yes, Your Honor. And I have to emphasize that it's not just any omission. It's an omission with a specific intent to cause the death of a child. Castleman did provide that the degree of physical force required under the ACCA is different from misdemeanor crime or violence. But the relevant portion of Castleman dealt with what it means to use force. And that's the relevant portion that's applicable to these ACCA cases and is the one that this Court has already employed in United States v. Edwards and United States v. Garcia-Ruiz by adopting Castleman in those ACCA-related cases. And then what do you say about Chambers? Because Chambers draws a distinction between action, which it says the force clause is concerned with, and inaction, where it suggests there is no use of force. I believe Chambers dealt with specific statutes dealing with failure to report, I believe. Those cases don't require a specific underlying intent. They just say, if you fail to report, you're guilty. But intent's not the issue here. We get to intent when we get to the word use. That's where intent comes up. But we're not talking about use now. We're talking about force. And you want to say that omission is force. Yes, Your Honor. Chambers says inaction is not action, and action is force. So. Well, Your Honor, if we look at the language of the statute, it says, like you say, use of force. It doesn't say that it has to be exerted by the perpetrators, just using a force. So by the government's argument is that in undertaking these omissions, they are, for lack of a better word, appropriating themselves of an external force and using that force as a means to cause death. Or another way, they're employing an external force knowingly as a device to bring upon the death. Now, going back to the fact that. It's sort of an odd use of force, isn't it, to say that doing nothing is using something. I would I would disagree with that, Your Honor, for example. No, you're using your car right now, I take it. I'm sorry? I take it you're using your car right now because you're not driving it. I'm not using it, Your Honor. Exactly. So if you're not using force, then we don't say you're using it. Well. In that in that particular instance, Your Honor, we're not using it because the car is obviously stationary, but for example. You. Let's say there's a a three year old infant, again, sleeping in a bedroom with a window open on a cold winter night and you decide to not close that window. For the specific purpose of killing that child. The force you're using is Mother Nature. The force you're using is the cold weather, the cold temperatures. And that's the argument that the argument is making, that you're not necessarily using force, you're a force of your own, but you're appropriating an external force as your device or weapon of choice. I thought the Eighth Circuit and the Seventh Circuit went even a step further. My understanding, it's not expressed in the cases, but my take on those cases that in the case of withholding care from an infant or withholding medicine from a person who needs it is that it's it's those organic chemical consequences that are sure to follow and what they do to the it's actually the withholding of the care that's the use of force. But that leads me to a question. I wouldn't, I mean, can't you posit circumstances where the omission is neither of those two things that that could end up in a murder? And then what do you do? Your Honor, I honestly cannot posit. Oh, you can't. An omission. I'm sorry, I understood Your Honor's question correctly. I cannot at the moment come up with an example. There's no, once you've defied it that broadly, no one can come up with anything because it's either it's either energy or it's entropy. And we're going to say both is force, then we've covered the universe, right? So there you go. Yes, Your Honor. Now, going back to Congress and the fact that we no longer have the residual clause, be that as it may, it is highly unlikely that Congress intended for the force clause not to on the path of inevitable force. That, Your Honor, is why the government maintains that attempted murder under Puerto Rico law, even if by an act of omission, qualifies as a violent felony under the ACA. Now, with regards to Bias' one conviction of second degree murder, we also contend that it qualifies as a violent felony as it requires malice aforethought. Malice aforethought implies, as the Supreme Court of Puerto Rico has said, an intent to kill another person. Or as the Third Circuit has said with their statute, I believe it was Pennsylvania, which is closely related to ours, has very similar language. It is basically an intent to kill another person. The fact that it could be theoretically caused by reckless behavior is not dispositive because there is, the Supreme Court of Puerto Rico has made a distinction between mere recklessness, which is covered under negligent homicide, and the theoretical recklessness required for a second degree murder. We've got two pretty clear precedents. One tells us intent is certainly enough to have use. No doubt about that. But we also have precedent that says recklessness, ordinary recklessness, is not capable of satisfying the use clause. We've held that. So you've now got this other form of recklessness. And the question is, which is it more like? For second degree murder, it is a recklessness similar to the criminal code's definition of a cold-hearted indifference, Your Honors. That is, the government's position as to second degree murder. And you said we should treat that like intent, not like ordinary recklessness. Correct. Because it is a recklessness undertaken with malice aforethought. It is not a recklessness, for example, like criminal negligence under Puerto Rico, which is a carelessness like the other forms of negligence, which is want of skill, inattention, non-observance. It is not a recklessness with a lack of intent, or brought on by accident. If we were to agree with you on that, and then we were to decide the robbery issue, the robbery of a vehicle, and find that the presence of a weapon distinguished it enough from our precedent, then we would not need to decide the attempted murder issue. Is that correct? Correct, Your Honor. The government would only need to win on two rather than all three. And likewise, the defense would have to win two out of three. As for, now briefly as to the carjacking, Puerto Rico carjacking statute, appellant's argument in the reply brief, which piggybacks off the government's two additional elements of the taking of a vehicle and the use of a deadly weapon, they state that intimidation component includes a threat of damage to property. And they claim that that takes it out of the violent felony because it's not a threat to a physical force against another person. That argument, Your Honor, has been squarely addressed by, squarely addressed and rejected by this court in United States v. Garcia Ortiz, which the government cites in its opening brief for another purpose that is equally helpful in the context of replying to this argument in their reply brief. There, the court explained that a word is known by the company that keeps it. And in that case, the phrase fear of injury immediately preceded the word violence that could be committed by violence or fear of injury. And it explained that the fear of injury contemplated had necessarily to be of the kind of force that was also contemplated under violence. And under that analysis, the intimidation contemplated by Puerto Rico carjacking statute is like the violence described in the clause preceding it in the statute. And so, even when based on a threat of injury to property. No Puerto Rico law tells us that. I'm sorry? We don't have any case law that sheds light on that. No, Your Honors. Not, at least not that I've been able to identify. No, no rulings by the Puerto Rico authorities that would, that would limit that threat to property to mean that it has to be to put somebody in fear of personal injury. I, there's, I don't know how we're, how we're supposed to find a way to limit it to the way that you want it under Puerto Rico law. Maybe I missed something in your argument. Well, Your Honor, the government's argument is that this is a matter of statutory, of statutory interpretation. This is a case in which the term intimidation is listed along with the term violence. Violence necessarily is against a, an actual person. And as this, I'm sorry? You can be, use violence against a car. Take a sledgehammer to a car. That sounds pretty violent to me. Isn't your better argument, statute is all talking about using an object capable of causing grave bodily harm? Yes, Your Honor. Correct. This is a, not just a weapon, a deadly weapon, Your Honor. Correct. And it's use of a deadly weapon rather than just possession of a firearm, which are the cases cited by the defendant in his opening brief. Those cases dealt with mere possession of a firearm when conducting an armed robbery or an assault. Here, the statute, the various languages of statute requires the use, the active employment of that deadly weapon in the endeavor of obtaining the vehicle. I see my time is up. If the panel has no further questions, we submit the briefs. Thank you. Just want to make three quick points, Your Honor. First, with regards to Brother Counsel's assertion that Puerto Rico's robberies and, and Puerto Rico robberies and robbery of a motor vehicle component of intimidation does not reach threats to the foreclosed by Article 173, excuse me, 174 of the Puerto Rico Penal Code, which expressly states that intimidation can be directed at persons and property alike. Also, wanted to touch briefly or go back briefly to Judge Callada's hypothetical involving, and the government's position that withholding of care constitutes a use of force against, again, I respectfully submit that the government's position is foreclosed by this court's decision in Teague, which we also cite in our brief. And finally, the government has argued that or cited Supreme Court decisions that hold that murder has no comparison in terms of moral depravity. And it asked the court to affirm the ACA sentence on the basis of common sense. But the best indication of the, of congressional intent is the statutory text itself. And here it clearly provides in the remaining force clause that a use of force against the person of another is required. I understand that with the advent of Johnson, Johnson 2, the residual clause has been struck or validated as void for vagueness, but I think that's the province of Congress to fill in any gaps in the law. And it is not up to the courts to do so. If the panel has no further questions. Thank you. I would ask for the court to reverse Mr. Vias' judgment and to remand the case for the imposition of a non-ACA sentence. Thank you.